IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN PATRICK MOORE,**

   **Plaintiff,**

 vs.              **Civil Action 2:12-cv-609**
                  **Judge Marbley**
                  **Magistrate Judge King**

**BRENT CRUSE,** *et al.,*

   **Defendants.**

## REPORT AND REOMMENDATION

   John Patrick Moore ("Plaintiff"), now an inmate at the Southern Ohio Correctional Facility, filed this civil rights action under 42 U.S.C. § 1983 on July 10, 2012 against Brent Cruse, Josh Pfeifer, John Thornhill, and Jacob Walker (collectively, "Defendants"). *Complaint*, Doc. No. 5. The *Complaint* asserts claims under § 1983 for violations of the Eighth and First Amendments to the United States Constitution. Plaintiff also asserts claims of conspiracy and defamation. *Id.* at pp. 5, 5A, 5C.

   This matter is before the Court for consideration of *Defendants Cruse, Pfeifer, Thornhill, and Walker's Motion for Summary Judgment* ("*Motion for Summary Judgment*"), Doc. No. 31. Plaintiff was expressly advised by the Court of the consequences of his failure to respond to the motion, *Opinion and Order*, Doc. No. 37, p. 4, but has nevertheless filed no response to the *Motion for Summary Judgment*. For the reasons that follow, it is **RECOMMENDED** that Defendants' *Motion for Summary Judgment* be **GRANTED**.

1

I.  **Background**

Plaintiff alleges that he was at Clever Gym of the Chillicothe Correctional Institution wearing "religious headgear"[1] when he was stopped by Defendant Cruse. *Complaint*, p. 5. Upon observing Plaintiff wearing religious headgear in the gym, Defendant Cruse "informed [Plaintiff] that he is not permitted to wear headgear in the gym." *Declaration of Brent Cruse*, Doc. No. 39-2, ¶ 6. Defendant Cruse "further informed Moore that in order to wear religious headgear in the gym he must provide the proper religious affiliation paperwork." *Id.* Plaintiff then "became irate, stated 'fuck you,' and attempted to exit the building. *Id*. at ¶ 7. Defendant Cruse gave Plaintiff "a direct order to stop, and he refused." *Id* at ¶ 8. Defendant Cruse "attempted to place Inmate Moore on the wall to be handcuffed. At that time Moore pulled away and punched [Defendant Cruse] in the left side of [his] face." *Id.* at ¶ 9.

Plaintiff alleges that Defendant Cruse "proceeded to attempt to slam him against the wall and then attempted to remove [Plaintiff's] koofi from [Plaintiff's] head. *Complaint*, p. 5. Plaintiff "evaded [Defendant Cruse's] attempt and a struggle ensued." *Id*. Defendant Cruse "placed Moore on the floor and attempted a handcuff technique with the assistance of [Defendants]." *Id*. Plaintiff "continued to physically resist [Defendants'] orders and resisted [their] attempts

---

[1] In this case, religious headgear refers to a "Muslim ('koofi')." *Complaint*, p. 5. The word "is properly spelled kufi." *Wilson v. Moore*, 270 F. Supp. 2d 1328, 1345 n. 16 (N.D. Fla. 2003). "The Kufi cap is a small, round, head covering with religious significance for Muslims." *Muhammad v. Lynaugh*, 966 F.2d 901, 902 n. 1 (5th Cir. 1992).

2

to place handcuffs on him." *Declaration of John Thornhill*, Doc. No. 31-8, ¶ 7; *See also Declaration of Jacob Walker*, Doc. No. 31-9, ¶ 6; *Declaration of Josh Pfeifer*, Doc. No. 39-3, ¶ 6; *Declaration of Brent Cruse*, ¶ 10.

Defendant Thornhill "assisted [Defendant] Cruse and other officers in order to control [Plaintiff's] legs while he was placed on the gym floor." *Declaration of John Thornhill*, ¶ 6. Defendant Pfeifer "was eventually able to secure Inmate Moore's right arm and placed handcuffs on both arms." *Declaration of Josh Pfeifer*, ¶ 7. Defendant Walker assisted in "placing Inmate Moore on the ground" and "assisted in escorting him to Post 5." *Declaration of Jacob Walker*, ¶¶ 6, 8. Each Defendant states that he "used only the amount of force that was necessary to restrain [Plaintiff] while he physically resisted [their] orders and attempts to place handcuffs on him." *Declaration of Jacob Walker*, ¶ 10; *See also Declaration of John Thornhill*, ¶ 9; *Declaration of Josh Pfeifer*, ¶ 9; *Declaration of Brent Cruse*, ¶ 12. Defendants did not "make any comments to [Plaintiff] regarding his religious beliefs." *Declaration of Jacob Walker*, ¶ 11; *See also Declaration of John Thornhill*, ¶ 11; *Declaration of Josh Pfeifer*, ¶ 10; *Declaration of Brent Cruse*, ¶ 13. Defendant Cruse "did not attempt to remove Inmate Moore's headgear." *Declaration of Brent Cruse*, ¶ 13.

As a result of the incident, "the left side of [Defendant Cruse's] face was injured." *Declaration of Brent Cruse*, ¶ 11; *See also Use of Force Committee Report* ("*UOFC Record*"), attached to *Motion for Summary Judgment* as Exhibit C-2, at p. 35. The Medical Exam

3

Report indicates that Plaintiff's eye was bruised and he had facial abrasions. *UOFC Record*, p. 31. Following the incident, "a Use of Force Committee determined that the force utilized by [Defendants] in order to control the incident was justified, appropriate, and not excessive." *Declaration of Brent Cruse*, ¶ 14; *See also UOFC Record*, p. 3 ("[I]t is the conclusion of this committee that the force utilized in order to control this incident was justified and not inappropriate and/or excessive."). The Rules Infraction Board found Plaintiff guilty of physical resistance to a direct order, disobedience of a direct order, and causing, or attempting to cause, physical harm to another. *Disposition of the Rules Infraction Board* ("*RIB Record*"), attached to *Motion for Summary Judgment* at Exhibit C-1, at p. 1 (*citing* Ohio Admin. Code 5120-9-06(C)(4), (20), (21)).

II. **Standard of Review**

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing

4

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

III. **Discussion**

As noted *supra*, Plaintiff has not responded to Defendants' *Motion for Summary Judgment*. The facts stated in the affidavits and other papers submitted in support of the *Motion for Summary Judgment* will therefore be accepted as true by the Court. *See* Fed. R. Civ. P. 56(c).

5

Plaintiff brings this action under 42 U.S.C § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C § 1983. A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law that causes (2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (*citing Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Because § 1983 is a method for vindicating federal rights, and is not itself a source of substantive rights, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts claims under § 1983 for violations of the Eighth and First Amendments to the United States Constitution; he also asserts claims of conspiracy and defamation. Each claim will be discussed in turn.

A.  **Eighth Amendment Excessive Force Claim**

Plaintiff brings an excessive force claim under the Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 665 (1962). The Eighth Amendment prohibits the infliction of "cruel

6

and unusual punishments." U.S. Const. amend. VIII. To constitute an excessive force claim under the Eighth Amendment, "the offending conduct must reflect an 'unnecessary and wanton infliction of pain.'" *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

A claim of excessive force has both an objective and subjective component. *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The subjective component requires that the "offending conduct . . . be wanton." *Wilson*, 501 U.S. at 302. "Whether the measure taken inflicted unnecessary and wanton pain and suffering turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley v. Albers*, 475 U.S. 312, 320—21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). "Factors to consider in determining whether the use of force was wanton and unnecessary include the extent of the injury suffered by an inmate, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response.'" *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

In the case presently before the Court, Plaintiff was given a "direct order to stop and he refused" and "attempted to exit the building." *Declaration of Brent Cruse*, ¶ 7—8. Defendant Cruse "attempted to place Inmate Moore on the wall to be handcuffed," at

which point Plaintiff "punched [Defendant Cruse] in the left side of [his] face." *Id* at ¶ 9. Defendant Thornhill then "assisted [Defendant] Cruse and other officers in order to control [Plaintiff's] legs while he was placed on the gym floor." *Declaration of John Thornhill*, ¶ 6. Defendant Pfeifer "was eventually able to secure Inmate Moore's right arm and placed handcuffs on both arms." *Declaration of Josh Pfeifer*, ¶ 7. Defendant Walker assisted in "placing Inmate Moore on the ground" and "assisted in escorting him to Post 5." *Declaration of Jacob Walker*, ¶¶ 5, 8. Plaintiff's injuries included a bruised eye and facial abrasions, while Defendant Walker suffered a hand injury and Defendant Cruse suffered injuries to the ear, head, and knee. *UOFC Record*, pp. 31, 33, 35.

In analyzing the Defendants' conduct under the factors articulated above, it is apparent that force was applied in "a good faith effort to maintain or restore discipline" and that the force used by each Defendant was justified by a legitimate penological concern for order within the prison. *See Whitley*, 475 U.S. at 320–21. There was a need for application of force based on the threat that Plaintiff posed to prison discipline and security after Plaintiff hit Defendant Cruse in the face. *Declaration of Brent Cruse*, ¶ 9. Moreover, Plaintiff demonstrated a clear disregard for direct orders in refusing Defendant Cruse's "direct order to stop" and "physically resist[ing] [Defendants'] direct orders to comply." *Declaration of Brent Cruse*, ¶¶ 8, 10. As Plaintiff physically resisted, it required the efforts of four Defendants to control Plaintiff's legs, place him on the ground, and handcuff him before escorting him from the

8

premises. *Declaration of John Thornhill*, ¶ 6; *Declaration of Josh Pfeifer*, ¶ 7; *Declaration of Jacob Walker*, ¶¶ 5, 8. The eye bruise and facial abrasions suffered by Plaintiff were relatively non-severe. The amount of force used was proportionate to the threat posed by Plaintiff. Based on the forgoing analysis, there is no evidence that Defendants' actions "inflicted unnecessary and wanton pain and suffering" on Plaintiff; to the contrary, the Court concludes that Defendants applied force "in a good faith effort to restore discipline." *See Whitley*, 475 U.S. 320—21.

The objective component of an Eighth Amendment claim "requires that the pain be serious." *Moore*, 2 F.3d at 700. This objective inquiry is "contextual and responsive to contemporary standards of decency;" however, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 8—9 (quoting *Johnson*, 481 F.2d at 1033). In addition to looking at the seriousness of the injury, a court must look to "the nature of the force." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (citing *Hudson*, 503 U.S. at 9).

> Because prison officials "must make their decisions in haste, under pressure, and frequently without the luxury of a second chance," we must grant them "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

*Combs*, 315 F.3d at 557 (quoting *Hudson*, 503 U.S. at 6).

In the case presently before the Court, the objective component of the excessive force standard has not been satisfied. The uncontroverted record establishes that Plaintiff punched Defendant

9

Cruse in the face and "continued to physically resist [Defendants'] orders and [their] attempts to place handcuffs on him." *Declaration of John Thornhill*, ¶ 7. Defendant Thornhill "assisted [Defendant] Cruse and other officers in order to control [Plaintiff's] legs while he was placed on the gym floor." *Id.* at ¶ 6. Defendant Pfeifer "was eventually able to place handcuffs on [Plaintiff]" and Defendant Walker "assisted in escorting him to Post 5." *Declaration of Jacob Walker*, ¶ 7—8. Plaintiff's injuries were, as noted *supra*, relatively minor. *UOFC Record*, p. 31.

Plaintiff's relatively minor injuries were a result of Defendants' efforts to maintain prison safety and security; therefore, it is reasonable to conclude that "the force used by Defendants was minimal and proper." *See Quinn v. Tackett*, No. 1:10-CV-590, 2013 WL 5353053, at *5 (S.D. Ohio Sept. 24, 2013). Indeed, there is no evidence that Defendants used excessive force or more force than was necessary under the circumstances. In short, Plaintiff has not presented "a genuine issue of material fact regarding the objective seriousness of the harm inflicted on him" on his Eighth Amendment excessive force claim. *See id*. Defendants are therefore entitled to summary judgment on this claim.

B. **First Amendment Free Exercise Claim**

Plaintiff alleges that Defendants violated his rights under the First Amendment when Defendant Cruse told Plaintiff that he had "to have paperwork" for his religious headgear (specifically, a "koofi"). *Complaint*, p. 5. The First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall

10

make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes,* 771 F.2d 920, 929 (6th Cir. 1985)). However, "[i]t is well-settled that prisoners' rights under the Free Exercise Clause [of the First Amendment] may be subject to reasonable restrictions." *Weinberger v. Grimes,* No. 07–6461, 2009 WL 331632, at *4 (6th Cir. Feb. 10, 2009) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.,* 65 F.3d 489, 491 (6th Cir. 1995)). Prisoners' First Amendment rights are "not violated if the challenged polices [are] reasonably related to legitimate penological interests." *Id*. (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)).

In the case presently before the court, Defendants' actions did not unconstitutionally infringe Plaintiff's free exercise of religion. Significantly, Defendant Cruse did not prohibit Plaintiff from all use of religious headgear; rather, Defendant Cruse informed Plaintiff that "in order to wear religious headgear in the gym he must provide the proper religious affiliation paperwork." *Declaration of Brent Cruse*, ¶ 6. This requirement did not substantially burden Plaintiff's freedom to wear the religious headgear. *See Treesh v. Bobb-Itt*, No. 2:10-cv-211, 2011 WL 3837099, at *4 (S.D. Ohio Aug. 29, 2011). A prison regulation requiring paperwork for religious headgear is reasonably related to legitimate penological interests. *See*

11

*Weinberger*, 2009 WL 331632, at *4. "The needs of the institution and penological objectives must be balanced against the right of the individual prisoner." *Jihaad v. O'Brien*, 645 F.2d 556, 564 (6th Cir. 1981). Allowing inmates to wear religious headgear in areas outside their cells and during activities other than religious services "conceivably could undermine the [prison's] legitimate penological interests, primarily its overriding concern for prison security." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (holding that "prison regulations restricting the use of Kufi caps and religious insignia bore reasonable relationship to legitimate penological interest of prison security.").

In sum, Plaintiff's First Amendment claim fails for two reasons. First, Plaintiff has presented no evidence that his free exercise of religion was substantially burdened. Second, a requirement that an inmate request and obtain permission in order to wear religious headgear is "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 78. Under these circumstances, there is no genuine dispute as to any material fact on this claim and Defendants are entitled to summary judgment. *See* Fed. R. Civ. P 56(a).

C. **Conspiracy Claim**

Plaintiff alleges that Defendants were "gunning for [him]," *Complaint*, p. 5B, and that he was "made aware" that he "should 'watch out'" and that "this incident was an obvious set up by officers." *Id*. at 5A, 5B. In order to establish a civil conspiracy claim under 42 U.S.C. § 1983, a plaintiff must show that there was a single plan to deprive plaintiff of his constitutional rights, that the alleged

12

coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant. *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011)(citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "Vague and conclusory allegations unsupported by material facts are insufficient to state a [§ 1983 civil conspiracy] claim." *Hamilton v. City of Romulus*, 409 F. App'x 826, 835 (6th Cir. 2010) (citing *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

Because, for the reasons stated *supra*, Plaintiff has failed to establish a deprivation of his constitutional rights, it follows that he cannot established an actionable claim for civil conspiracy under 42 U.S.C. § 1983. Defendants are therefore entitled to judgment as a matter of law on this claim.

    D.    **Defamation Claim**

Plaintiff also asserts a defamation claim, alleging that he "was charged with assaulting [D]efendant Cruse in an attempt to further take the blame off of the defendants." *Complaint*, p. 5C. However, it is well-settled that defamation, without more, does not state a claim under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693 (1976). "'Reputation alone, apart from some more tangible interests,' [is] neither liberty nor property by itself sufficient to invoke the procedural protection of the Due Process Clause." *Naegele Outdoor Advertising Co. of Louisville, a Div. of Naegele, Inc. v. Moulton*, 773 F.2d 692, 701 (quoting *Paul v. Davis*, 424 U.S. 693). Plaintiff's conclusory allegation of defamation is insufficient to state a claim under 42 U.S.C. § 1983.

Moreover, Plaintiff may not pursue a state law claim of defamation against Defendants unless and until the Ohio Court of Claims determines that these state employees are not entitled to civil immunity under O.R.C. § 9.86.  *See* O.R.C. § 2743.02(F); *Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir. 1989)(state employees enjoy immunity from suit in a claim under Ohio law); *Johns v. University of Cincinnati Med. Assocs.,* 804 N.E.2d 19, 24 (Ohio 2004).

In short, Defendants are entitled to judgment as a matter of law on this claim.  *See* Fed. R. Civ. P 56(a).

It is therefore **RECOMMENDED** that Defendants' *Motion for Summary Judgment,* Doc. No. 31, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of*

*Teachers. Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


December 13, 2013                         *s/ Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge